IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                        Plaintiff,

Vs.                                     Case No. 06-40065-01-SAC

MICHAEL W. HINES,

                        Defendant.

MEMORANDUM AND ORDER

Defendant is charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. This case comes before the court on defendant's motion to suppress custodial statements (Dk. 14). The government has responded, opposing suppression. (Dk. 26). An evidentiary hearing was held on September 26, 2006 after which the court took the motion under advisement. Having reviewed the pleadings and briefs, the admitted evidence, and the arguments of counsel, the court is ready to rule.

**Facts**

The following facts are based upon the admitted exhibits and the

testimony of Officer Larry Gonzales, the sole witness, whose testimony the court finds to be credible. On March 26, 2006, at approximately 8:49 a.m., Topeka Police Department officers responded to a call about a domestic dispute. While en route to the residence, officers were advised that a white male named Michael Hines was pounding on the front door and windows of a residence, as if attempting to gain entry. Dispatch later advised that defendant had been known to carry a firearm, and that defendant had left the scene in a black Ford pickup.

Officer Gonzales was nearby when he observed a white male speeding in a black Ford pickup. He followed the pickup for a while to verify that it was the same one involved in the domestic incident, then stopped it. As he approached the pickup, he saw defendant leaning toward the passenger side area, as if to hide or grab something beneath the seat. Upon seeing this gesture, Officer Gonzales pulled his service weapon and kept it in low profile as he approached the pickup.

Officer Gonzales made contact with defendant and asked him to put his hands on the steering wheel, which defendant did. The officer advised defendant he had been stopped because of a report of a domestic disturbance, and asked for his identification. Defendant acknowledged the officer, provided his identification, and admitted that he had recently been at the incident location to check on his sixteen year-old daughter. The officer then asked defendant to exit

the pickup and defendant complied. Officer Gonzales then explained the possibility that a firearm was involved, and asked permission to pat defendant down for weapons, which permission was granted. Officer Gonzales found no firearm on defendant's person during the pat down.

Officer Gonzales then stated that for everyone's safety, he wished to check the interior of the pickup to make sure there were no weapons, to which defendant replied, "okay." The officer had defendant sit on the curb between defendant's pickup and the officer's vehicle, facing the street. Officer Ortiz then arrived as back-up, and kept an eye on defendant.

Officer Gonzales returned to the pickup and asked the ten to twelve year-old boy in the front passenger to exit the vehicle so that he could check the pickup for weapons. As the child stepped out of the pickup the child grabbed a coat that he had been sitting on. Officer Gonzales found this to be unusual since the boy was already wearing a heavy coat, so asked the child to leave the coat in the pickup. After the child complied, the officer frisked him for weapons and, finding nothing, had him sit beside defendant on the curb.

When Officer Gonzales picked up the coat by its sleeve he felt a small, bulky item, later identified as a purple Crown Royal bag containing a ziplock bag with marijuana and zigzag rolling papers. As he lifted the coat, a small

3

loaded firearm in a brown leather holster fell onto the seat. Officer Gonzales immediately returned to defendant and placed him in handcuffs, then frisked the boy again and placed him in his patrol car. Officer Gonzales then returned to the pickup where Officer Ortiz was inspecting the firearm.

After the firearm was cleared, Officer Gonzales took it and the marijuana from the pickup, intending to take it to the trunk of his patrol car where he would secure them as evidence. As Officer Gonzales walked in front of defendant, carrying the evidence in plain view in front of his chest, defendant stated in a low voice, "That stuff is mine," and that he had "more ammo" in his right front pocket. Officer Gonzales then stepped back to the pickup, placed the evidence on the tool box in the truck bed, approached defendant, and advised him of his Miranda rights. Defendant indicated that he understood his rights and was willing to speak with the officer.

Officer Gonzales then searched defendant and found 44 rounds of .25 caliber ammunition in his pocket. He then questioned defendant, first asking about the domestic incident. Defendant replied that he went to the incident location to check on his sixteen year-old daughter. Officer Gonzales then asked about the firearm found in his pickup, and defendant stated it belonged to a friend, that he had had possession of it for two weeks and that he had shot it down at the river a

4

couple of times. Officer Gonzales then asked about the marijuana, and defendant replied that it was his and that he had initially purchased it in a one-ounce quantity for $30. The defendant stated he uses marijuana for personal use. When asked about his personal usage of drugs, defendant admitted that he had smoked a marijuana cigarette and had had a beer that morning before going to his daughter's residence.

The evidence was then secured and defendant was transported to the Shawnee County Department of Corrections. En route, defendant told the officers that he had been convicted of aggravated burglary in 1989 and criminal threat in 1990.

**Pre-Miranda statements**

Defendant's sole contention is that he was subject to custodial interrogation before he was Mirandized, in violation of the Fifth Amendment and the Miranda rule.[1] Although counsel has not clarified which of defendant's statements are at issue, the court does not believe defendant claims that he was improperly asked about his identification, about the location of the firearm, or for

---

[1] Although defendant initially alleged a due process violation, this issue was withdrawn by defendant's counsel at the evidentiary hearing. Counsel stated that the sole issue for the court's resolution to the pre-Miranda interrogation and contended that defendant's custodial pre-Miranda statements were in response to the police officer's acts which were equivalent to interrogation.

consent to search.  To the extent defendant may challenge those questions and responses, the court finds them to be permissible in this case given defendant's non-custodial status at the time such statements were made, and the governing law regarding interrogation.  *See, respectively, Fox v. Ward*, 200 F.3d 1286, 1298 (10th Cir. 2000) (holding officers' acts which were "normally attendant to arrest and custody" were not interrogation); *New York v. Quarles*, 467 U.S. 649, 655 (1984)(holding that police officers do not need to recite Miranda warnings prior to asking a suspect questions "reasonably prompted" by a concern for the public's or their personal safety);*United States v. Gay*, 774 F.2d 368 (10th Cir. 1985) (asking a defendant if he would consent to a search of a vehicle does not constitute an interrogation).

The court believes that defendant's primary objection is to the manner in which Officer Gonzales carried the gun and drugs in plain view as he walked in front of defendant, allegedly confronting defendant with the evidence and prompting defendant's admissions that the "stuff" was his and that he had "more ammo" on his person.

Two conditions must be met before Miranda warnings are required.  The suspect must be in custody, and the questioning must meet the legal definition of interrogation.  *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993).  The

Fifth Amendment does not bar the admission of volunteered statements which are freely given. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).  The government does not contest the issue of custody, but denies that defendant was subject to interrogation before being administered and waiving his Miranda rights.

It is well established that "interrogation encompasses not only questioning but 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004), quoting *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).  "The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.*, 446 U.S. at 300-301.

The test of whether an interrogation has occurred is an objective one. *United States v. Gay*, 774 F.2d 368, 379 n. 22 (10th Cir. 1985).  The focus is on the perceptions of a reasonable person in the suspect's position rather than on the intent of the investigating officer.  *Innis*, 446 U.S. at 301, *Rambo*, 365 F.3d at 909.  Thus, interrogation may be found even though no questions are used, where an officer's statement or acts can reasonably be understood as an effort to provoke an incriminating response from the defendant.

Here, there is no evidence that defendant was "subjected to compelling influences, psychological ploys, or direct questioning." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987). "There were no accusatory statements or questions posed by law enforcement officials." *United States v. De La Luz Gallegos*, 738 F.2d 378, 380 (10th Cir. 1984). Officer Gonzales took a direct route from the pickup where the evidence was found, to his patrol car where he intended to secure it.[2] Although he made no attempt to hide the evidence from defendant's view as he passed defendant, neither did he hesitate, stop in front of defendant, or display the evidence to defendant in a manner which a reasonable person would have thought was likely to prompt some response. Under these circumstances, the officer's act of walking in front of defendant instead of behind him, while carrying the evidence in plain view, was not the functional equivalent of express questioning. Defendant's statements were unprovoked, spontaneous, and voluntary, and thus were not the result of interrogation requiring Miranda warnings. *See United States v. Salas*, 1999 WL 1259031, *1 (10th Cir. 1999)

**Post-Miranda statements**

Defendant admits that he was Mirandized and agreed to talk, but

---

[2]The officer could have chosen to walk behind defendant, but would have had to step up on the curb, exit the street, walk behind defendant for 10-12 feet, step down the curb and into the street before getting to his patrol car.

contends that because of the initial *Miranda* violation, the subsequent interrogation was unconstitutionally tainted. Because the court has found no initial *Miranda* violation, the subsequent interrogation is not unconstitutionally tainted by the statements made by the officers pre-Miranda. *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

IT IS THEREFORE ORDERED that defendant's motion to suppress custodial statements (Dk. 14) is denied.

Dated this 10th day of October, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge